663 So.2d 790 (1995)
STATE of Louisiana
v.
Alan SIMMONS.
No. 95-KA-309.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 1995.
*792 John M. Mamoulides, District Attorney, Terry M. Boudreaux, Assistant Dist. Atty., Gretna, LA, for Plaintiff-Appellee.
Linda Davis-Short, Indigent Defender Board, Gretna, LA, for Defendant-Appellant.
Before GAUDIN, DUFRESNE and CANNELLA, JJ.
*793 DUFRESNE, Judge.
The defendant was charged by bill of information with possession of cocaine in violation of LSA-R.S. 40:967 C. When arraigned on the charge, the defendant entered a plea of not guilty. Following the trial court's denial of his motions to suppress evidence and confession, the defendant entered into a plea agreement with the State and pled guilty as charged while reserving the right to appeal the denial of the motions to suppress evidence and confession in accordance with State v. Crosby, 338 So.2d 584 (La.1976). Thereafter, the trial court sentenced the defendant to five years at hard labor with credit for time served.
Subsequently, the State filed a multiple offender bill of information seeking enhanced sentencing of the defendant as a second felony offender and the defendant entered a plea of not guilty to the bill of information. On March 15, 1995, the trial court conducted a hearing on the multiple offender bill of information and found the defendant to be a second felony offender. The court then vacated the previous sentence and resentenced the defendant to eight years at hard labor without benefit of probation or suspension of sentence, but with credit for time served.

FACTS
On the afternoon of January 13, 1994 at approximately 2:00, Detective Blain Hebert of the Kenner Police Department, accompanied by two agents of the Bureau of Alcohol, Tobacco and Firearms, was conducting surveillance of 3021 Phoenix Street on an unrelated matter when he observed a blue car arrive at that address. The defendant, who was known to the detective from a previous arrest as a "narcotics violator", exited the car along with Nolen Merritt, who was also known from a previous arrest. The defendant then approached Apartment C of 3021 Phoenix Street.
Detective Hebert had a confidential source living inside the apartment complex and he had been informed that crack cocaine transactions were occurring in the complex. He also had made arrests at the complex.
When the defendant reached Apartment C, the door opened and Glynn Bartholomew, who had previously been arrested by the detective, stepped outside of the apartment. "Some type of exchange" which lasted for about 15 to 18 seconds took place between the defendant and Bartholomew. The defendant then walked away from the apartment and Merritt met him; however, Detective Hebert did not observe any exchange between them. After both the defendant and Merritt entered the car, they drove away from the scene.
Detective Hebert was convinced that a crack cocaine transaction was occurring when he noticed Bartholomew step from the apartment, having received information that Bartholomew, who was "on probation for ... distribution of crack cocaine at the time", was still dealing crack cocaine.
Detective Hebert decided to allow the car to leave the area so as not to alert the subject of the surveillance. He also notified the Kenner Police Department to send a marked unit to the area "for when we would do the stop."
Subsequently, while pursuing the blue car, the marked unit activated its lights and siren and the blue car turned onto West Loyola before stopping. As the car turned onto West Loyola, Detective Hebert noticed "some type of shuffling on the front seat" between the defendant and Merritt. Detective Hebert, who testified that he was conducting a "felony stop", instructed both the defendant and Merritt to exit the car. Detective Hebert commanded the defendant to step to rear of the car and to place his hands on it, and a search of the defendant's person revealed a matchbox containing crack cocaine. After the defendant was advised of his rights and placed under arrest, he replied: "What about the big white guy?" "I got that for him. What's going to happen to him?"
After the defendant was transported to Kenner Lock-up, Detective Hebert advised him of his rights using a standard advice of rights form which the defendant later signed. When Detective Hebert asked the defendant if he wished to make a statement without his attorney present, the defendant responded: *794 "Yeah, I want to talk to you." The defendant then gave a statement which was typed by Detective Hebert.
At the suppression hearing, Detective Hebert testified that in his statement the defendant admitted:
That he had a crack cocaine habit; he had purchased crack cocaine on more than one occasion on that date from Glynn Bartholomew from 3021 Phoenix, Apartment C; that he purchased crack cocaine from Glynn Bartholomew for himself and Nolan (sic) Merritt, that he hadI think he was given about forty-seven dollars ($47) that day to purchase crack, and they had been smoking all day. They would smoke crack, go back and get more, smoke, go riding around.
Following the conclusion of the statement, Detective Hebert and the defendant signed both of the pages of the typed statement.
Additionally, Detective Hebert testified that the advice of rights form and the statement were incorrectly dated January 15, 1994. He later corrected the date on the statement, but he did not know whether the date was corrected on the advice of rights form.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in denying defendant's motion to suppress physical evidence.

DISCUSSION
The defendant contends that the cocaine was seized as the result of an unlawful stop in that Detective Hebert lacked reasonable suspicion for the initial stop. The State argues that Detective Hebert had "ample reasonable cause" to arrest the defendant without a warrant and thus the cocaine was seized incident to the arrest.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293 (La.1985); State v. Foley, 570 So.2d 171 (La.App. 5th Cir.1990), writ denied, 576 So.2d 27 (La.1991).
In the instant case the circumstances indicate that an arrest occurred, rather than a investigatory stop, when Detective Hebert ordered the defendant to exit the car and commanded him to step to the rear of the car and to place his hands on it. See State v. Davis, 558 So.2d 1379 (La.App. 5th Cir.1990) where the court found that the circumstances indicated that an arrest occurred when the officers drove their car into a parking lot and ordered the defendant and his companion to put their hands on the car.
Because an arrest preceded the search, the State must show probable cause to arrest in order to justify the search. Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Raheem, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Raheem, supra. Once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area which in his immediate control is permissible in order to remove any weapons from the person and to prevent evidence from being destroyed. State v. Andrishok, 434 So.2d 389 (La.1983). However, an arrest without probable cause is illegal and the seizure of evidence pursuant thereto is also illegal. State v. Chirlow, 617 So.2d 1 (La.App. 5th Cir. 1992), writ denied, 620 So.2d 874 (La.1993).
A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the information and the informant's reliability, when examined under the totality of the circumstances are established. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Burton, 416 So.2d 73 (La.1982). While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, this alone *795 will not always support a finding of probable cause. Corroboration of details of an informant's tip by independent police investigation is valuable in applying the totality of the circumstances analysis. Illinois v. Gates, supra.
Also relevant to a determination of probable cause is the nature of the area in which the activity reported to the police occurs. The reputation of an area is an articulable fact upon which a police officer may legitimately rely. Such so-called high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer. State v. Buckley, 426 So.2d 103 (La.1983).
Louisiana jurisprudence requires more than merely innocent activity within a suspect area. In State v. Kinnemann, 337 So.2d 441 (La.1976), the Louisiana Supreme Court found insufficient facts upon which to base a finding of probable cause where the defendant entered a residence under surveillance by the police as a suspected drug outlet empty-handed and emerged a short time later carrying two paper bags, even though the defendant looked up and down before crossing the street and had a changed demeanor after leaving the residence.
All the information then in the possession of the police is to be considered in the determination of whether probable cause existed for the arrest; the quantity and quality of evidence needed for probable cause are measured by lesser standards than those for conviction of the defendant at trial. State v. Buckley, supra.
At the suppression hearing, Detective Hebert testified that he had received information that Bartholomew was "still dealing crack cocaine." Detective Hebert did observe an exchange between the defendant and Bartholomew which he believed was a "crack cocaine transaction". Therefore, there appears to have been sufficient corroboration of the allegation that Bartholomew was dealing cocaine.
Detective Hebert further testified that he had been informed that drug transactions were occurring in the apartment complex which "goes from 3100 all the way to 4000."
In conclusion, it appears that this warrantless arrest was made with probable cause and therefore the cocaine was legally seized.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in denying defendant's motion to suppress statement.

DISCUSSION
The defendant contends that the trial court erred by not suppressing his typed statement. Specifically, the defendant argues that the State failed to prove that the statement was free and voluntarily given and that the statement was the result of an illegal arrest.
Before a confession or inculpatory statement can be admitted into evidence, it must be established that the accused who makes the statement during custodial interrogation was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Thucos, 390 So.2d 1281 (La.1980).
Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129 (La.1983). The admissibility of a confession or statement is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement will not be overturned unless they are not supported by the evidence. State v. Jackson, 414 So.2d 310 (La.1982). The judge's function is confined to the ascertainment of whether the confession or statement was free and voluntarily. State v. Howard, 505 So.2d 228 (La. App. 3rd Cir.1987). The weight to be given a confession or statement, including a determination of whether a confession or statement was in fact made, is a matter for the jury. State v. Howard, supra.
At the suppression hearing, Detective Hebert testified that the defendant was verbally *796 advised of his rights immediately following his arrest. After being transported to Kenner Lock-up, Detective Hebert again advised the defendant of his rights. The defendant stated that he understood his rights, signed a waiver of rights form and expressed a desire to make a statement.
Detective Hebert further testified that he did not threaten the defendant into making the statement nor did he make any promises to him. He also stated that nothing led him to believe that the defendant did not understand what was transpiring, and there was nothing erratic about his behavior.
Even though the advice of rights form and the statement are absent from the record, Detective Hebert's testimony sufficiently established that the defendant was advised of his rights and understood them and that his statement was freely and voluntarily given and the trial court did not err in refusing to suppress the statement.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court erred in finding defendant was a habitual offender.

DISCUSSION
The defendant contends that the trial court erred in finding that he was a second felony offender. Specifically, the defendant argues that the fingerprint evidence was unreliable and thus did not establish his identity as the same person who was convicted of the prior felony. The defendant also argues that the State failed to prove that the cleansing period did not elapse.
In order to prove a defendant is a multiple offender, the State need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982). The State also has the burden of proving that "cleansing period" provided by LSA-R.S. 15:529.1(C) has not elapsed. State v. Metoyer, 612 So.2d 755 (La.App. 5th Cir.1992). At the time of the multiple bill hearing, LSA-R.S. 15:529.1(C) provided:
This Section shall not be applicable in cases where more than seven years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any said seven-year periods.
The "cleansing period" begins to run from the date that the defendant is actually discharged from state custody or supervision. State v. Anderson, 349 So.2d 311 (La.1977); State v. Metoyer, supra. Thus, evidence of the date of discharge is essential to the case. State v. Metoyer, supra. However, if less than the "cleansing period" has elapsed since the defendant's last conviction, the State need not prove the date since the defendant's last conviction, the State need not prove the date of discharge on the earlier sentence in the multiple offender proceedings. See State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977).
In the multiple bill of information, the State alleged that in addition to pleading guilty to the instant offense of possession of cocaine on September 29, 1994, the defendant also pled guilty to simple robbery on March 13, 1990 in case number 89-3170 in the 24th Judicial District Court.
At the multiple bill hearing, Merril Boling, a fingerprint identification expert, testified that the defendant's fingerprints taken in court on March 7, 1995 and on March 13, 1995 matched those fingerprints on the reverse side of the arrest register from the predicate offense. Additionally, the arrest register was linked to the record of the predicate offense by similarity of name, date of offense, type of offense and item number, and the record of the predicate offense contained a waiver of rights form, minute entry and commitment evidencing the plea to simple robbery on March 13, 1990. Therefore, the State has carried its burden of proving that the defendant was the same person who pled guilty to simple robbery. See State v. *797 Walters, 591 So.2d 1352 (La.App. 4th Cir. 1991).
Regarding the State's burden of proving that the "cleansing period" did not elapse, it is noted that the defendant was convicted of the prior felony on March 13, 1990 and of the instant offense on September 29, 1994. Because just over 4 and 1/2 years have passed since the prior conviction, it was not necessary for the State to prove the discharge date. See State ex rel. Clark v. Marullo, supra.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Also assigned as error are any and all errors patent on the face of the record.
We have reviewed the record and find no errors patent.

DECREE
As for the above assigned reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.