11 GRISBAUM, Judge.
Ronnie C. Davis, the defendant herein, appeals his conviction of second degree murder (La. R.S. 14:30.1). We remand the matter and affirm.

FACTS AND PROCEDURAL HISTORY

On January 24, 1994, Linda Robinson, John Hawkins, Shawn Brown, Roy Johnson, and Ms. Robinson’s 12-year-old niece, Cynthia, were at 1348 Myrtle Street, a home rented by Linda Robinson’s sister, Doris. Ms. Robinson testified that “crack” cocaine was • used and sold at this location. The defendant came to the Myrtle Street house three times that day. According to the testimony of Ms. Robinson, Mr. Hawkins, and Mr. Johnson, on the defendant’s third visit to the home, he was accompanied by his brother, Melvin Davis, and Shedrick Givens. |2AU three of these men were armed and each wore a mask.[1] Further, all the witnesses testified that they knew who these men were, regardless of the masks. After robbing the occupants of the house, according to the record, the Davis brothers opened fire, shooting Ms. Robinson 22 times and killing her seven-month-old fetus, wounding both Mr. Hawkins and Mr. Johnson, and killing Shawn Brown. According to the testimony of the forensic pathologist, Shawn Brown died as a result of a shotgun wound to the head. Finally, every eyewitness testified that, while Melvin Davis and Shedrick Givens were armed with pistols, the defendant carried a shotgun.
On February 3, 1994, the Jefferson Parish Grand Jury handed down a true bill charging-all three men, Ronnie Davis, the defendant below, Melvin Davis, and Shedrick Givens with first degree murder, a violation of La. R.S. 14:30, in the death of Shawn Brown. This case was assigned number 94-550 in Division “B” of the Twenty-Fourth Judicial District Court. The defendant pled not guilty. In September 1994, the State amended the charge to second degree murder, a violation of La. R.S. 14:30.1, as to all three defendants. The trial judge heard and denied the defendant’s motions to suppress identification, evidence, and statements under docket number 94-550.
On April 20, 1995, the Jefferson Parish Grand Jury handed down a six-count indictment against the defendant, Ronnie Davis, and his two codefendants. The first count of that indictment duplicated the charge of second degree murder in docket number 94-550. The defendant pled not guilty to those charges. On August 22, 1995, the State amended the indictment and dismissed the indictment in case number 94-550.
la On August 22, 1995, a jury trial commenced as to all three defendants. The trial judge granted a motion for mistrial as to all defendants and subsequently granted the defense motions to sever the defendants. The defendant was tried alone on the first count of the indictment, the second degree murder of Shawn Brown. After a four-day trial, the jury returned a verdict of guilty as charged. The defendant appeals this conviction, making several assignments of error.

ASSIGNMENTS OF ERROR

Defendant assigns as error the following:
(1) The trial court erred in allowing the coroner to testify regarding the death of Linda Robinson’s fetus;
*278 (2) The tidal court erred in allowing the State to introduce into evidence items seized which had no connection to the crime;
(3) The trial court erred in denying the defendant’s motion to suppress his statement to the police;
(4) The trial court erred in allowing the State to introduce into evidence the photographs of the codefendants;
(5) The trial court erred in allowing evidence of other crimes; .
(6) The trial court failed to advise the defendant of the prescriptive period for post conviction relief;
(7) The trial court erred in sentencing the defendant without benefit of parole, pardon [sic], or suspension of sentence; and
(8) Error patent review.

ERROR ONE

The defendant argues the trial judge erred in allowing the coroner to testify regarding the death of Linda Robinson’s fetus. He argues that the testimony of Dr. Susan Garcia, regarding the autopsy she performed on Linda Robinson’s fetus, was inadmissable because it was irrelevant to the prosecution of Shawn 14 Brown’s murder and evidence of other crimes. The defendant claims this evidence inflamed and prejudiced the jury. We disagree.
Evidence is relevant if it has any tendency of proving a fact that is of consequence in the action before the court more probable than not. La.Code Evid. art. 401. Further, all relevant evidence is admissible unless constitutionally prohibited. La.Code Evid. art. 402. Finally, relevant evidence may be excluded if its probative value is outweighed by “the danger of unfair prejudice.” La.Code Evid. art. 403. The trial court is given great discretion in determining whether evidence is relevant, and absent a clear abuse of discretion, rulings on relevancy of evidence should not be disturbed on appeal. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168; State v. Mayeaux, 570 So.2d 185 (La.App. 5th Cir. 1990), writ denied, 575 So.2d 386 (La.1991).
The record shows that the testimony' of Dr. Garcia corroborated the testimony of Linda Robinson. Ms. Robinson testified that the defendant was standing right next to the man who shot her 22 times, that she saw the defendant shoot Shawn Brown in the same time frame, and that her seven-month-old fetus died of a gunshot wound in this incident. The testimony of Dr. Garcia merely stated that Ms. Robinson’s fetus died as a result of a gunshot wound to his head. In allowing this testimony, the trial judge stated in a bench conference:
Well, first of all, let me say that I think that the incident, itself, is part of the res gestae.
There is a great deal of merit to how far you — to the argument that you cannot go too far with this autopsy report. If, in fact, your purpose in introducing evidence about the autopsy is to corroborate the series of events as the witnesses have testified to, let’s leave it at that.
You can ask her how the child died.
It should be noted that the trial judge sustained a defense objection and refused to admit into evidence an autopsy photograph of Ms. Brown’s fetus because “the Rintroduction of the photograph would only serve to inflame the jury....” Where the evidence in question constitutes an integral part of the act, the purpose of its admission is “to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.” State v. Brewington, 601 So.2d 656, 657 (La.1992). We find no merit to this assignment of error.

ERROR TWO

The defendant next argues that the trial judge erred "in allowing certain items seized by the police, a shotgun and shotgun shells, which had no connection to the crime, to be admitted as evidence.[2] In fact, the defense, with the State, jointly entered the shotgun in question into evidence. Clearly, the defense may not raise the issue of the admission of its own exhibit on appeal.
However, the shotgun shells in question were entered into evidence over the timely *279 objection of the defense. Defense counsel based his objection on the relevancy of the shells in question. Nevertheless, the trial judge apparently agreed with the State’s argument that the existence of 40 shotgun shells that fit a twelve-gauge shotgun found at the home of the defendant was probative, where the defendant had stated that the only shotgun he ever had was a twenty gauge. The murder weapon was never found, but there was testimony that it was a twelve-gauge sawed-off shotgun. We first note that, if we found the admission of these shotgun shells into evidence to be an error, it would constitute harmless error. However, based on the wide discretion of the trial judge on issues of relevancy discussed above, we find no error here.

ERROR THREE

The defense argues that the trial judge erred in denying the motion to suppress the defendant’s statement to the police. Before an inculpatory | a statement can be admitted into evidence, it must be established that the accused who made the statement during custodial interrogation was first advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Further, it must be shown “that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” State v. Simmons, 95-309 (La.App. 5th Cir. 10/18/95), 663 So.2d 790, 795 (citation omitted). Finally, the admission of a confession or statement is a question for the trial judge and “his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement will not be overturned unless they are not supported by the evidence.” Id. (citation omitted).
The record shows the defendant was sufficiently advised of his Miranda rights. The defendant voluntarily came into the Sheriffs Office to make a statement. Detective Phil Ramon testified that he informed the defendant of his Miranda rights and that the defendant executed a waiver of those rights. Detective Ramon described the defendant as being in goo.d physical condition, alert and sober. The defendant came in to make a statement at around 11:00 a.m., and his recorded statement was taken at around 5:00 p.m. that afternoon. Detective Ramon testified that he informed the defendant that he was not free to leave when he advised him of his rights that morning and that the defendant was very cooperative and “willing to stay to get this straightened out.” Detective Ralph Sacks testified that he took a recorded statement from the defendant at about 5:40 p.m. that same day. Detective Sacks stated that, prior to taking the defendant’s statement, he reviewed with the defendant the rights waiver form signed earlier in the day by the defendant with Detective Ramon. Detective Sacks testified that he had not promised the defendant anything, had not threatened the defendant, hit the defendant, coerced the defendant or forced him Lin any way to make his statement. Finally, Detective Sacks said the defendant freely and voluntarily gave his statement. Taking into account that the defendant knew he was not free to leave, the fact that approximately six hours passed between the time the defendant first waived his Miranda rights and the time those rights were reviewed and a taped statement was taken did not create an atmosphere that induced the defendant to make an inculpatory statement. We find no merit in this assignment of error.

ERROR FOUR

The defendant next argues the trial judge erred in admitting the photographic lineups containing pictures of, and used to identify, Melvin Davis and Shedrick Givens. Again, we disagree. “Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible.” State v. Sterling, 95-673 (La.App. 5th Cir. 2/27/96), 670 So.2d 1316, 1319 (citation omitted). All three of the witnesses testified they knew their assailants and they immediately picked each one out in a photo lineup. In his opening statement to the jury, the defense counsel stated that the defendant’s participation in this crime was “dependent on the IDs that were made by the three people ... the photo IDs, I intend on using those three people to show that *280 there’s reasonable doubt involving my client’s involvement.” These photographs illustrated and substantiated the identification testimony of the State’s witnesses and were therefore relevant.

ERROR FIVE

The defendant next argues that the trial judge erred in allowing evidence of other crimes into evidence. The Louisiana Code of Evidence provides that evidence of “other crimes” is generally inadmissable in a criminal matter to prove a person's character but “may ... be admissible for other purposes, such as ... 18 opportunity, intent, preparation, plan, identity, ... or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” La.Code Evid. art. 404(B)(1). This Court has found the doctrine of res gestae, which is embodied in La.Code Evid. art. 404(B)(1), to be broad and include “not only spontaneous utterances and declarations made before and. after commission of crime, but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances.” State v. Clark, 529 So.2d 1353, 1358 (La.App. 5th Cir.1988) (citations omitted).
Here, the defense objected to the testimony of Roy Johnson and Linda Robinson, that the defendant had been to the house very near the time of the murder trying to get “crack” cocaine. In overruling the defense objection, the trial judge stated:
Res gestae is not limited to the exact time, as long as it’s part of the same transaction and a continuing chain of events within a reasonable time frame. You’re talking about a period that’s been testified as 30 minutes. And it does relate directly to the time frame of this.
Ergo, we find no error.

ERROR SIX

The defense claims the trial court failed to inform the defendant of the prescriptive period for post conviction relief as required by the Louisiana Code of Criminal Procedure as found in article 930.8(C). The transcript before us does not show the defendant was so informed; accordingly, we order the trial court to correct this by sending written notice to the defendant within ten days of the rendering of this opinion, then filing written proof in the record that the defendant received such notice. See State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.

UERROR SEVEN

The defendant next ai’gues the transcript shows the trial judge erred in sentencing him by the following trial judge comment, to-wit, “without benefit of parole, pardon or suspension of sentence.” We agree.
Although the record shows that the minute entry and the commitment papers correctly state that the defendant is to serve his sentence “without benefit of probation, parole or suspension of sentence,” the transcript clearly shows that the trial judge mistakenly ordered the sentence to be served “without benefit of parole, pardon or suspension of sentence.” Since the law requires a sentence of life imprisonment at hard labor without, the benefit of parole, probation or suspension of sentence for a conviction of second degree murder, it is axiomatic that, where the transcript and the minute entry do not agree, the transcript will prevail. We, therefore, have harmless error, because we can order the . trial eoui’t to amend the record to reflect the proper sentencing language.

ERROR EIGHT

Finally, the defendant asks for error patent review. We note the trial judge failed to inform the defendant of the provisions of La.Code Crim. P. art 894.1(D). Subsection (F) of that same article precludes a sentence being declared inadequate or unlawful based on a noncompliance with Subsection (D). Therefore, we find the trial judge’s failure to advise the defendant of the provisions of article 894.1(D) harmless error which requires no remedy.
For the reasons assigned, we remand this matter to the trial court to amend the record to reflect a sentence of “life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence” as required *281 by La. R.S. 14:30.1(B). Further, we order the trial court to send written notice of the prescriptive period for post conviction relief within ten days of the rendition of this | ipopinion, then to file -written proof in the record that the defendant received such notice. In all other respects, we affirm the trial court.

AFFIRMED AND REMANDED.

. The Davis brothers wore stocking masks and Shedrick Givens wore a hockey goalie's mask.

. These items consisted of a shotgun jointly entered into evidence by the State and the defense as State’s Exhibit 38/Defensc Exhibit 1, and shotgun shells, State’s Exhibit 40.