782 So.2d 132 (2001)
STATE of Louisiana
v.
Armando MURRAY.
No. 00-KA-1380.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
*133 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Donald A. Rowan, Jr., Ken J. Dohre, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant-Appellant.
(Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and WALTER J. ROTHSCHILD).
DUFRESNE, Chief Judge
By this appeal, defendant, Armando Murray, challenges the trial court's denial of his motion to suppress statements. For the reasons set forth herein, we find no error in the trial court's ruling and accordingly, we affirm defendant's convictions and sentences.
The Jefferson Parish Grand Jury returned an indictment charging defendant with armed robbery, a violation of LSA-R.S. 14:64, aggravated oral sexual battery, a violation of LSA-R.S. 14:43.4, and aggravated rape, a violation of LSA-R.S. 14:42. The matter proceeded to trial before a twelve person jury, at the conclusion of which defendant was found guilty as charged. The trial court subsequently sentenced defendant to twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension for the armed robbery conviction, twenty years at hard labor for the aggravated oral sexual battery, and life imprisonment at hard labor without benefits for the aggravated rape. Defendant now appeals.

FACTS
On September 13, 1996, Rose Bacas was employed as a cashier at an E-Z Serve Food Mart on Belle Chasse Highway, working the 10:00 p.m. to 8:00 a.m. shift. During the course of her shift, defendant entered the store, put a gun to her back, and commanded her to "open the register." Defendant took the money out of the register and put it in his pocket. Defendant then put Ms. Bacas in the bathroom, and ordered her to take her clothes off and give them to him.
Ms. Bacas disrobed in the bathroom, and defendant attempted several times to rape her. By struggling against defendant, Ms. Bacas initially was able to prevent penetration. Becoming frustrated, defendant then told Ms. Bacas that if she did not perform oral sex on him that he would "blow her brains out." Fearing that defendant would follow through on his threat, Ms. Bacas complied. Afterwards, defendant sat on the floor and told Ms. Bacas to "sit on it." Ms. Bacas testified that it was during this final rape attempt that defendant actually penetrated her.
While this sexual act was being committed against Ms. Bacas, a customer, Mr. Gerard Basham, entered the store. Defendant quickly pulled up his pants, grabbed a smock, and ran to the front. Meanwhile, Ms. Bacas, still naked, edged close to the open door and gestured for the customer to help her. Realizing that something was wrong, Mr. Basham backed up to seek help when defendant appeared *134 wearing an employee's vest. Mr. Basham then attempted to pay for his items, but defendant told him that the cash register was broken and that he could have them. Mr. Basham left the store and called 9-1-1. In the meantime, defendant returned to the back of the store with a hammer, pried open the cabinet where the surveillance video was located, and removed the tape. Defendant told Ms. Bacas to get dressed and warned her that if she said anything to the police he was going to "blow her brains out." By this point, the police had arrived.
Deputy Ed Mannix and Officer Brian McTague entered the store and noticed that the cashier was nowhere in sight. Exploring further, they turned down a hallway behind the cashier's counter and observed the cashier walking toward them followed by defendant. According to Officer Mannix, the female cashier had a panicked look on her face and mouthed to them, "he robbed and raped me." Defendant then attempted to squeeze by the officers in the narrow hallway, and as he did so stated, "move man, there ain't nothing going on ... we were just back here f___ing." When the officers tried to restrain defendant, he became violent. Following a brief struggle, the officers arrested defendant. They retrieved cash and lottery tickets from defendant pursuant to his arrest. The officers also recovered a pistol and a security videotape that defendant had discarded upon their approach. The pistol was later discovered to be a pellet gun.
Defendant was transported to the Jefferson Parish Correctional Center, at which time he gave a statement to Officer Mannix. In this initial statement, defendant admitted that he put a gun to the cashier's back and took money from the register. Later that morning, defendant gave a second statement to Detective Debra Labit. In this taped statement, defendant admitted that he "robbed the lady with a pellet gun" and that he had her undress so that she could not readily flee and call the police. Defendant denied doing anything of a sexual nature with Ms. Bacas. Several hours later, defendant gave another statement to Detective Labit, in which he admitted that some sexual activity had occurred. In this third and final statement, defendant stated that he rubbed his penis against the cashier's "backside," put his hands and tongue on one of her breasts, and instructed her to perform oral sex upon him but then told her to stop when she put her "lip right there."
In addition to giving these statements, defendant also testified at trial. In his trial testimony, defendant admitted that he robbed the store, that he had the cashier perform oral sex, and that he attempted to have sexual intercourse with her, but insisted that he was unable to maintain an erection sufficient for that purpose.

DENIAL OF MOTION TO SUPPRESS STATEMENTS
In this assignment of error, defendant contends that the trial court erred in denying his motion to suppress and in admitting his statements at trial. Defendant asserts that he was beaten by the police officers at the time of his arrest for refusing to answer questions and that he felt compelled to give these statements for fear of being beaten again. He additionally asserts that the state failed to specifically rebut the allegations of police misconduct and thus, failed to prove that his statements were free of coercion. We find no merit to these arguments.
Before a confession or inculpatory statement can be admitted into evidence, it must be established that the accused who makes the statement during custodial interrogation *135 was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748; LSA-C.Cr.P. art. 703(D); LSA-R.S. 15:451.
Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. The admissibility of a confession or statement is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement will not be overturned unless unsupported by the evidence. State v. Simmons, 95-309 (La.App. 5 Cir. 10/18/95), 663 So.2d 790.
The fact that an officer had to use force to subdue an arrestee is certainly an element which the judge should consider on the question of voluntariness. Other evidence, however, may well convince the judge beyond a reasonable doubt that the statement was nonetheless voluntary. State v. Pittman, supra.
In the present case, we find that the record clearly supports the trial court's determination that the statements were freely and voluntarily given. Officer Mannix testified that there was a brief struggle before defendant was arrested; however, he denied that any force, coercion, threats or promises were used to obtain defendant's statement. In fact, Officer Mannix testified that defendant approached him about giving a statement. Prior to taking this initial statement, the officer advised defendant of his rights. Defendant signed a form acknowledging that he understood his rights, that he wished to waive those rights, that no promises or threats had been made to him, and that no pressure or coercion of any kind had been used against him. After executing this form and prior to beginning his statement, defendant again indicated that he was giving the statement freely without any coercion or promises.
That same morning, defendant gave a second statement. Once again, prior to giving this statement to Detective Labit, defendant was advised of his rights and signed a form indicating that he understood his rights, and that he wished to waive them. In the taped statement which followed, defendant indicated that he was giving this statement of his own free will. Detective Labit testified that at no time did she force or threaten defendant into making the statement, nor did she promise him anything in return for the statement. In fact, during the course of this statement, the detective informed defendant that the giving of the statement was completely his choice and that no one was going to beat or hurt him if he chose not to give a statement. Defendant once again indicated that he understood.
Several hours later, defendant gave his third and final statement to Detective Labit. In the transcript of this third statement, defendant acknowledged that Detective Labit had previously read him his rights. Labit then, however, read defendant his rights again. Defendant stated that he was giving this statement freely and that nobody forced, threatened or promised him anything. In this third statement, defendant talked about the officers beating him when he was arrested. At that point, the following exchange occurred:
DET. LABIT:
O.K. When I talked to you earlier, did you clearly understand that if you wanna give this statement then we will let you give the statement. But did you *136 clearly understand that if you don't nobody's gonna hurt you.
DEFENDANT:
I understand.
DET. LABIT:
O.K. Cause I wanna make sure you know we're not forcing you to do this. No one's gonna hurt you.
While the officers testified that no force or violence was used to obtain the statements, defendant presented a different scenario. Defendant claimed that he did not resist arrest, and that the officers beat and kicked him after he was handcuffed. He further alleged that they threatened to put him in the car with a K-9 and that he was scared that they were going to beat him again if he did not give a statement.
The judge was faced with this conflicting testimony and obviously chose to believe the testimony which indicated that the statements were not given as a result of force or coercion. As evidenced by the foregoing discussion, the credibility determinations of the trial judge are supported by the record. Accordingly, we find that the defendant's statements were properly admitted into evidence and that the trial court did not err in denying defendant's motion to suppress confession.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review of the record reveals that the sentence imposed for aggravated oral sexual battery was illegally lenient insofar as the trial judge failed to specify that the sentence be served without benefit of parole, probation, or suspension. LSA-R.S. 14:43.4C. However, the state did not preserve its right to appeal the sentence by either filing a motion to reconsider sentence or making a timely objection. LSA-C.Cr.P. arts. 881.2(B), 881.1(D). Under the jurisprudence in effect at the time defendant was sentenced, this court is prohibited from correcting the illegally lenient sentence since the prosecution failed to preserve the issue for appeal. State v. Fraser, 484 So.2d 122 (La.1986); State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036.
Our review further reflects that the trial judge failed to inform defendant of the prescriptive period for post conviction relief as mandated by LSA-C.Cr.P. art. 930.8. Accordingly, we remand the case with instructions to the trial court to advise defendant of this prescriptive period by sending written notice to him within ten days of the rendition of this opinion and to file written proof that defendant received such notice.
For the reasons set forth herein, we affirm defendant's convictions and sentences and remand the matter for further action in accordance with this opinion.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.