797 So.2d 706 (2001)
STATE of Louisiana
v.
Randall MARLER.
No. 2000 KA 0493.
Court of Appeal of Louisiana, First Circuit.
February 16, 2001.
*707 Doug Moreau, District Attorney, Tracey Ewing, Assistant District Attorney, Baton Rouge, for State of Louisiana.
Kevin Patrick Monahan, Baton Rouge, for Randall Marler.
Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
GUIDRY, J.
Defendant, Randall Marler, was charged by bill of information with driving while intoxicated (DWI), fourth offense, in violation of La. R.S. 14:98. After the denial of defendant's motion to suppress physical evidence and oral statements, defendant withdrew an earlier not guilty plea and pled guilty as charged. Thereafter, defendant filed motions to withdraw his guilty plea and to quash the bill of information. After the trial court granted the motion to withdraw the guilty plea and denied the motion to quash, defendant again pled guilty with a reservation of the right to appeal the trial court's rulings denying the motion to suppress and the motion to quash. See State v. Crosby, 338 So.2d 584 *708 (La.1976). Later, the trial court sentenced defendant to imprisonment at hard labor for a term of ten years with two years of the term to be served without benefit of parole. Defendant has appealed the adverse trial court rulings on the motion to suppress and the motion to quash in two assignments of error.

FACTS
Between approximately 1:15 and 1:30 a.m. on July 2, 1996, Officer Christopher Polito and Sgt. Jeff Smith of the Baton Rouge City Police Department were together in a parked police unit in Baton Rouge in a parking lot across the street from a service station at the intersection of Airline Highway and St. Gerard. They were there looking for illicit drug offenders and vice crime offenders. From their stationary location, Polito observed defendant's van approach at a slow rate of speed on Airline Highway. Defendant, the sole occupant in the van, turned onto St. Gerard and stopped in the street about seven or eight feet past the intersection. After the van remained there for about four or five minutes, Polito and Smith pulled up in their police unit behind the van and activated the emergency lights on the police unit. The officers' purpose in taking that course of action was to determine what defendant was doing and if anything was wrong with defendant. However, when the police unit was positioned behind the van, defendant shifted the van into reverse causing it to back up toward the police unit. Polito's response was to sound an air horn, which apparently caused defendant to stop the van and narrowly avoid a collision with the police unit. Defendant then pulled into the service station at the intersection. Polito and Smith followed the van, exited the police unit, and engaged defendant in a conversation. At that time, it was observed that defendant appeared to be intoxicated, as he had slurred speech and unsure balance when he stood. After obtaining permission from defendant to search the van, Polito and Smith found an open alcoholic beverage container and a crack pipe in the van.
Louisiana State Police Trooper Johnny Sparks came to the scene. Polito and Smith turned the DWI investigation over to Sparks. Sparks smelled a strong odor of alcohol about defendant's person. In addition to defendant's slurred speech, Sparks noticed defendant was holding on to the side of the van when he asked defendant to walk over to where he was. When defendant walked, he was unsteady on his feet. Sparks attempted to administer field sobriety tests to defendant. On the first of the tests, defendant did not follow Sparks' instructions. Fearing defendant might fall and hurt himself, Sparks ceased any further field sobriety testing. He arrested defendant for DWI and advised defendant of his Miranda rights.
Sparks then transported defendant to the East Baton Rouge Parish Prison. After advising defendant of his rights relating to chemical testing for blood alcohol content, Sparks made three attempts to have defendant blow into a breathalyzer machine. On the first and second attempts, defendant declined to blow into the machine and slid from the chair on which he was seated and had to be helped back into the chair. On the final attempt, defendant again declined to blow into the machine and slid from the chair to the floor where he appeared to be unconscious. Defendant was booked into the parish prison, which marked the conclusion of Sparks' investigation into the matter.[1]

*709 ASSIGNMENT OF ERROR NO. 1:

In this assignment, defendant contends that the trial court erred by denying the motion to suppress physical evidence and oral statements.[2] Defendant essentially argues he was illegally stopped by the police without reasonable suspicion for an investigatory stop; and, without making any other specific argument, he concludes that any evidence derived from the alleged illegal stop must be suppressed.
The Louisiana Supreme Court has recognized a three-tiered analysis governing the Fourth Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. At the second tierthe investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Lastly, at the third tier of custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1182-1183.
In evaluating alleged violations of the Fourth Amendment, the United States Supreme Court has undertaken an objective assessment of an officer's action in light of the facts and circumstances then known to him. State v. Garcia, 519 So.2d 788, 793 (La.App. 1st Cir.1987), writ denied sub nom., State v. Rodriguez, 530 So.2d 85 (La.1988) (citing Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Scott v. United States, 436 U.S. at 138, 98 S.Ct. at 1723.
In the instant situation, we are convinced that there was no detention of defendant for Fourth Amendment purposes when Polito and Smith pulled up behind defendant's van and activated the emergency lights on their police unit after observing defendant's vehicle stopped in the roadway for several minutes, particularly considering the hour of the night. Indeed, this action by the officers was no more or less than could be expected by diligent policemen who would likely approach any citizen under such circumstances to check to see what was going on, check on the physical condition of the driver of the vehicle, or render roadside assistance to a possibly stranded motorist. *710 Nor do we find that the activation of the emergency lights on the police unit in any way resulted in subjecting defendant to a Fourth Amendment seizure. While activating emergency lights may be used as a show of police authority, in this situation, use of emergency lights was a very prudent course of action for the safety of the officers, defendant, and anyone else who might have come upon the scene. See and compare U.S. v. Dockter, 58 F.3d 1284, 1286-1287 (8th Cir.1995), cert. denied sub nom., Shulze v. United States, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). Additionally, after defendant moved the van from the street to the service station, there was no legal impediment to the action of the officers in following him to that location and engaging him in conversation without effecting a seizure of defendant's person. Furthermore, viewing the circumstances objectively, we are convinced that, after defendant began backing his van toward the police unit and the impending collision between the two vehicles was avoided by Polito's sounding of the air horn, the officers had reasonable suspicion to effect a limited seizure of defendant pursuant to a Terry stop and to question him. Thereafter, the behavioral manifestations of defendant's intoxication (including slurred speech, unsure balance, and the odor of alcoholic beverage about his person) observed by the officers when they engaged him in conversation in the service station area where he exited the van, provided the officers with probable cause to arrest defendant for driving while intoxicated. Accordingly, the physical evidence and/or any oral statements defendant sought to suppress were not obtained in violation of the Fourth Amendment, and the trial court, therefore, correctly denied the motion to suppress.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2:
In this assignment, defendant contends that the trial court erred by denying his motion to quash, which related to defendant's challenge of only one of the predicate DWI convictions relied upon by the state to enhance the instant offense, i.e., a September 2, 1987 counseled guilty plea to second offense DWI in Baton Rouge City Court.
In reference to the challenged predicate plea, the instant record includes the affidavit charging the offense, a transcript of the arraignment proceeding at which the plea was entered, and a well-executed advice of rights and waiver of rights form. On appeal, defendant asserts that the predicate guilty plea is invalid because the city court judge conducted an en masse Boykin proceeding at which defendant was one of several defendants entering guilty pleas and because the transcript of the Boykin proceeding shows defendant had a question concerning his constitutional rights for the judge, which the judge never answered during the proceeding.
In State v. Carlos, 98-1366, p. 6 (La.7/7/99), 738 So.2d 556, 559, the Louisiana Supreme Court held that the burdenshifting principles established in State v. Shelton are applicable to the recidivist provisions of the DWI statute. The Supreme Court stated:
[T]his Court recognized that Boykin does not require that the entire burden be placed on the prosecution in a recidivism proceeding. 621 So.2d [769] at 779 [(La.1993) ] (relying on Parke [v. Raley], 506 U.S. [20,] 34, 113 S.Ct. [517,] 525-26[, 121 L.Ed.2d 391 (1992)]). Rather, the presumption of regularity that attaches to prior convictions encouraged us to revisit our previous system of placing the entire burden on the State to prove the validity of prior convictions. Id. Consequently, we held *711 that when a defendant denies the allegations contained in the bill of information in an habitual offender proceeding, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. Id. If the State meets this initial burden, the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. If the defendant carries this burden, then the burden reverts to the State to prove the constitutionality of the plea. Id. The State will meet this burden by producing a "perfect" transcript of the guilty plea colloquy. Anything less than a "perfect" transcript, such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant's Boykin rights were prejudiced. In Shelton, we held that the State carried its initial burden under the revised burden-shifting rules by producing a well-executed guilty plea/waiver of rights form and a minute entry which stated, inter alia, that the judge "gave the Defendant his rights." Id. at 770, 780. (footnote omitted.)
A perfect transcript reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin. State v. Carlos, 98-1366 at p. 7 n. 4, 738 So.2d at 559 n. 4.
Additionally, the Louisiana Supreme Court has expressed its preference for personal colloquies between a trial court and a defendant entering a guilty plea and has recognized that, while the failure of a trial court to address the defendant individually as well as personally may undermine the validity of any subsequent waiver of the defendant's constitutional rights, the knowing and intelligent waiver of the defendant's rights "depends upon the circumstances of each case." State v. Filer, XXXX-XXXX (La.6/30/00), 762 So.2d 1080, 1081 (per curiam) (citing State v. Strain, 585 So.2d 540, 544 n. 7 (La.1991)).
The transcript of the Boykin hearing for the predicate plea at issue herein reflects that after the city court judge explained collectively to all those present in the courtroom the constitutional rights afforded to an accused, including the triad of Boykin rights and the penalties for the various grades of DWI, the prosecutor told the judge that defendant's counsel had informed him that defendant wished to enter a guilty plea to the DWI charge. Defendant responded affirmatively that he wished to so plead.
Thereupon, prior to accepting defendant's guilty plea, the city court judge individually and personally addressed defendant as follows:
Q. State your address and date of birth, Mr. Marler?
A. Randall Marler, 10332 Gretna Green, 7/12/58.
Q. That's in Baker?
A. Yes, sir.
Q. File number 49122 charges you with DWI, second offense, Mr. Marler. Where you previously pled not guilty, do I understand correctly that you wish to plead guilty at this time?
A. Yes, sir.
Q. Did you discuss this matter fully with your attorney Mr. Batiste standing beside you?
A. Yes, sir.
Q. Are you satisfied with his advice and representation to you?
A. Yes, sir.
Q. Has anyone made any threats or promises or used any force, intimidation or coercion against you to make you do this?

*712 A. No, sir.
Q. So you're offering this guilty plea freely and voluntarily and of your own free will in court? When you plead guilty, Mr. Marler, you give up certain legal rights that have been explained in detail earlier this morning. Were you in the courtroom for that explanation?
A. Yes, sir.
Q. Did you hear and understand what was said?
A. Yes, sir.
Q. Do you have any questions about your legal rights?
A. Yes, sir.
Q. Pardon?
A. Yes, sir.
Q. And you understand that this conviction would set the stage for the later prosecution as a third offender if you should be re-arrested and convicted?
A. Yes, sir.
Q. Now, what do you want to do? Do you want to plead guilty to that charge?
A. Yes, sir.
[underscoring added.]
Defendant relies on the two underscored questions and responses from the excerpt of the Boykin transcript quoted above in support of his claim that he had a question for the city court judge that went unanswered. However, as reflected in the quoted excerpt, after the underscored questions and responses, defendant never posed any question(s) to the judge. Immediately prior to the underscored questions and responses, defendant expressly acknowledged to the judge that he had been in court for the en masse explanation of constitutional rights and that he had heard and understood what was said. Thereafter, at the conclusion of the Boykin hearing, when the judge asked defendant what he wanted to do and if he wanted to plead guilty, defendant answered in the affirmative.
Accordingly, taking into account the underscored questions and responses in context, together with the circumstance of defendant's guilty plea being a counseled plea, the execution of the advice of rights and waiver of rights form pertaining to the plea, the judge's explanation of Boykin rights collectively to those present in court, the judge's inquiries personally and individually with defendant, and the fact that defendant never asked the judge any question(s) about his legal rights, we are satisfied that after observing defendant and listening to his responses, the judge was in a position to determine the knowing and voluntary nature of defendant's waiver of constitutional rights as a condition precedent to the judge's acceptance of the plea. Hence, we find the record establishes this challenged predicate guilty plea was validly entered with a knowing and voluntary waiver of Boykin rights; and, thus, the trial court correctly denied defense's motion to quash relating to this plea.
This assignment lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The forgoing factual summary is derived from the testimony given by Officer Polito at the hearing on the motion to suppress and the testimony of Trooper Sparks at the hearing on defendant's motion for a preliminary examination, which immediately followed the suppression hearing. Sgt. Jeff Smith did not testify at either hearing, and defendant did not present any evidence at either hearing.
[2] In determining whether or not a ruling on a motion to suppress is correct, an appellate court may consider not only the evidence adduced at the suppression hearing but also evidence presented at a preliminary examination, whether or not the evidence from the preliminary examination was admitted in evidence at the suppression hearing. Accordingly, we have considered the testimony given by Officer Polito and Trooper Sparks in our review of the correctness of the ruling denying the motion to suppress. See State v. Francise, 597 So.2d 28, 30 n. 2 (La.App. 1st Cir.), writ denied, 604 So.2d 970 (La.1992).