828 So.2d 1101 (2002)
STATE of Louisiana
v.
Vauchon COJOE.
No. 01-KK-2465.
Supreme Court of Louisiana.
October 25, 2002.
*1102 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Steffie K. Billings, Jeffrey M. Burg, Eliabeth A. Privitera, for Applicant.
Hilliard C. Fazande, II, New Orleans, for Respondent.
PER CURIAM.
At stake in this pending prosecution for possession of cocaine in violation of La. R.S. 40:967(F) is the trial court's denial of respondent's motion to suppress approximately nine ounces of cocaine found in a plastic bag under the passenger seat of respondent's car by officers of the Drug Enforcement Agency (DEA) conducting a large scale narcotics operation in New Orleans in the early spring of 1999. Pursuant to respondent's writ application, the court of appeal unanimously reversed the trial court, concluding that it had erred when it denied his motion to suppress the evidence. State v. Cojoe, 01-K-1452 (La.App. 4th Cir.7/31/01). We granted the state's application to reverse that decision because the trial court correctly concluded that the officers had probable cause to arrest respondent at the time they stopped his vehicle.
Testimony at the hearing conducted on respondent's motion to suppress revealed that in August of 1998, DEA Special Agent Edward Coffey received information from informants and other DEA investigators that Your Way All Day Auto Detailing, located on Galvez and Bienville Streets in New Orleans, was involved in the trafficking of large amounts of cocaine in the New Orleans area. Based on the information, the Agency established wiretaps and pen registers on the telephone at the business. Coffey learned that the "main player" in the operation was an individual named Larry Dupor but the Agency never located him. However, from information received from the pen registers and corroborated by confidential informants, Coffey learned that Howard Lumar was also involved in the scheme. Accordingly, the Agency also set up pen registers and a wiretap on his cellular telephone and on the telephone at Lumar's residence.
On May 20, 1999, agents intercepted a telephone call from respondent to Lumar concerning a plan to meet at a Blockbuster Video Store. One of the parties told the other to "bring your digital," which Coffey understood as a code word for a digital scale, suggesting a drug transaction would transpire. Agents then set up surveillance and observed respondent and Lumar travel to the Blockbuster store where they met with an unidentified individual driving another vehicle. Respondent and Lumar then left the store, re-entered the vehicle and drove away. Subsequently, respondent dropped off Lumar at the car wash and drove towards Interstate 10.
The officer followed respondent to another nearby carwash and watched as he exited his vehicle, "pretty much walked in a circle," and then re-entered the car "and drove away at a high rate of speed." Coffey *1103 described this maneuver as a "heat run," which he explained is common among drug dealers and criminals "to check if they're being followed by law enforcement officers." The officers stopped respondent at Washington and Jefferson Davis in New Orleans. When asked the basis for the stop, Coffey stated:
We believed that he just consummated a drug transaction thereby he was in possession of an amount of illegal drugs or drug currency. So we effected his arrest at that time with the actions that we saw and based on the conversations that we intercepted on the wire intercept.
Coffey and another agent, Officer Clyde McLaughlin, exited their vehicles in police gear and ran towards defendant. When the officers approached him, respondent "was hunched over leaning towards the right, towards the passenger side of the vehicle." Based on his posture, Coffey stated that he believed that respondent "was reaching for a gun or something."
The officers removed respondent from his vehicle, and while Coffey advised him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and conducted a search of his person, McLaughlin searched respondent's vehicle. Agent Coffey found approximately $3,000.00 in respondent's front pocket and McLaughlin retrieved a plastic bag containing approximately nine ounces of cocaine from under the front passenger seat.[1] The officers then formally placed respondent under arrest for possession of cocaine.
The trial court found the state lacked probable cause to sustain the conspiracy charge against Lumar but denied the motion to suppress as it related to respondent. The court of appeal granted respondent's writ application and found that the trial judge erroneously denied the motion to suppress, reasoning that "[t]he officers lacked reasonable suspicion to initially detain the respondent. As such, all evidence obtained from that stop should be suppressed." Cohoe, 01-1452 at 1.
Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to physical restraint or when he submits to the assertion of official authority, California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991), no bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), from arrests based on probable cause. See State v. Broussard, 00-3230 pp. 3-4 (La.5/24/02), 816 So.2d 1284, 1287 ("[B]revity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest.") (citations omitted). In the present case, only a brief period of time separated the initial seizure of respondent and the discovery of the cocaine in his car, and the encounter otherwise lacked some distinctive arrest-like features, as the officers did not draw their weapons and did not place respondent in handcuffs before discovery of the contraband. Nevertheless, Agent Coffey testified that he intended to arrest respondent as soon as he stopped *1104 him and while the subjective intent of a police officer is relevant only to the extent "that [it] may have been conveyed" to the person, United States v. Mendenhall, 466 U.S. 544, 554, n. 6, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), the record fairly supports the conclusion that the officers communicated their intent when they emerged from their vehicles in police gear, ran towards respondent, advised him of his rights, and immediately searched him. See 3 Warren R. LaFave, Search and Seizure, § 5.1(a), p. 9 (3rd ed. 1996) (A seizure is an arrest, rather than a Terry stop, if "`a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'") (quoting United States v. Corral-Franco, 848 F.2d 536, 540 (5th Cir.1988)). Accordingly, this Court must determine whether the officers possessed probable cause rather than merely reasonable suspicion in ascertaining the legality of the detention.
As a general matter, police officers may make warrantless arrests if probable cause exists, that is, "when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." State v. Marks, 337 So.2d 1177, 1182 (La.1976) (citing Beck v. Ohio, 379 U.S. 89, 90, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)); La.C.Cr.P. art. 213. In addition, a warrantless arrest in a public place, if founded on probable cause, is valid regardless of the presence or absence of exigent circumstances. United States v. Watson, 423 U.S. 411, 423-24, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); Marks, 337 So.2d at 1181.
Respondent argues that Agent Coffey formed the intent to arrest him after observing the brief meeting at the Blockbuster store and that the intervening "heat run" which preceded the stop of respondent's vehicle therefore has no bearing on the probable cause determination. However, reviewing courts must take into account the totality of the circumstances known to the police at the moment an individual is seized for Fourth Amendment purposes, a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)(quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); State v. Johnson, 01-2081 p. 3 (La.4/26/02), 815 So.2d 809, 811 ("The assessment by a reviewing court of the cumulative information known to the officers avoids a `divide-and-conquer analysis' by which the whole become less than the sum of its parts because each circumstance examined individually may appear `readily susceptible to an innocent explanation.'") (quoting Arvizu, 534 U.S. at 274, 122 S.Ct. at 751).
The "heat run" observed by Agent Coffey before he stopped respondent's vehicle therefore forms part of the probable cause determination. Based on the totality of the circumstances known to the officers, we find that Agent Coffey possessed reliable and particularized information sufficient to have warranted in a man of reasonable caution the belief that respondent had committed a crime. Beck, 379 U.S. at 90, 85 S.Ct. at 225. Responding to information acquired through confidential sources, agents established authorized telephonic surveillance to investigate suspected narcotics trafficking. Although respondent was not previously known to the *1105 officers, he arranged a rendezvous with Lumar using language in an intercepted call that Agent Coffey found immediately suspect. The agent testified that he had conducted "easily" over a hundred drug investigations in the four and a half years in drug enforcement and that through his contact with confidential sources and other agents "who have been on much longer than myself," he had learned what certain phrases meant in the code used for street trafficking in drugs. Reviewing courts owe the officer's experience due deference, Arvizu, 534 U.S. at 274, 122 S.Ct. at 751, and subsequent events unfolded as the agent anticipated. Respondent and Lumar met as planned the following day, but for only a very brief period, suggesting a definitive purpose to the encounter. The agents followed respondent and watched as he conducted a "heat run" to determine whether he was being followed by the police. Respondent then pulled away at high speed. Given the information Coffey had acquired from the confidential sources coupled with that gleaned from the intercepted cryptic telephone conversation, respondent's apparent attempt to forestall any possible police pursuit after his meeting with Lumar, conduct entirely consistent with someone who had just engaged in a narcotics transaction, see, e.g., United States v. Posada-Rios, 158 F.3d 832, 853 (5th Cir.1998) (erratic and circular movement of targeted vehicle "typical of a `heat run'a tactic commonly used by drug traffickers to detect surveillance"); United States v. Broussard, 80 F.3d 1025, 1032 (5th Cir.1996)(same), gave the agents probable cause to arrest him and to search the vehicle. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment... permits police to search the vehicle without more.").
Accordingly, the trial court correctly denied respondent's motion to suppress the evidence. The court of appeal's decision to the contrary is reversed, the ruling of the trial court is reinstated, and this case is remanded to the trial court for further proceedings consistent with the views expressed herein.
DECISION OF THE COURT OF APPEAL REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED; CASE REMANDED.
JOHNSON, J., dissents.
NOTES
[1] After they arrested respondent, the officers proceeded to Lumar's residence, where they obtained consent to search for him. Although they could not locate him at the residence, shortly thereafter, officers acquired an arrest warrant and Lumar surrendered several weeks later.