947 So.2d 95 (2006)
STATE of Louisiana
v.
Darryl A. SMITH.
No. 06-KA-557.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 2006.
*96 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Thomas Block, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
*97 Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
The defendant, Darryl Smith, entered a Crosby[1] plea to charges of possession of cocaine. As is customary in a Crosby plea, defendant now challenges the trial court's denial of his Motion to Suppress. For the reasons that follow, we affirm.
FACTS:
At the suppression hearing, Officer Todd Giacona of the Jefferson Parish Sheriff's Office testified that he had seven years of police experience. For the previous two years, he had been assigned to "Project STAR." Officer Giacona explained that he was a community police officer for the Tallow Tree area, located on the West Bank of Jefferson Parish. In accordance with this position, he handed out business cards to people in the neighborhood and wore a pager. When residents wanted to report a problem, they would page him and relate information. Officer Giacona explained he received information from the community on a daily basis.
On March 24, 2006, Officer Giacona was involved in an ongoing investigation of Apartment C at 1037 Tallow Tree Lane, as well as an adjacent apartment. Earlier in the month, he had received information that there was drug activity at Apartment C. Although Officer Giacona had no specific information regarding the defendant, Officer Giacona testified that his confidential informant showed him a location on the second floor of an abandoned building at 1040 Tallow Tree Lane, which was across the street from the target apartment, and from which he could watch the drug activity. According to Officer Giacona, he had watched the building for a good while, and he had officers in the front of the building. When a "deal" was made, he would have the other units intercept the individuals.[2] Officer Giacona had made prior arrests in this area, "dealing with guns and illegal narcotics".
While Officer Giacona was watching the apartment with binoculars on March 24, 2006, he observed the defendant and another person ascend the staircase to meet with a third person, who exited from Apartment C. While the three men were outside on the balcony, Officer Giacona observed the defendant engage in a hand-to-hand transaction with the black male who exited from the apartment. Although the officer could not see what was being exchanged, he saw a hand-to-hand transaction where something was put in "their" pocket. Based on his experience, Officer Giacona believed he had witnessed a drug transaction.
The defendant and his companion descended the stairs and crossed the street, away from the other officers who were stationed downstairs. Officer Giacona went downstairs and "confronted them." He walked up behind them, drew his gun, and ordered them to the ground. At that point, the defendant dropped something, which was later determined to be a clear bag containing rocks of crack cocaine.
*98 The trial judge denied the Motion to Suppress with the following reasons:
THE COURT:
. . .
This Officer observed  he's been experienced in this kind of thing, he's familiar with the neighborhood, with an ongoing investigation. He sat and he observed what he believed to be a hand-to-hand sale. He's got the experience to know what a hand-to-hand sale looks like. He indicated that something exchanged hands and then was put in the pocket. Said it could have been a handshake, but it wasn't because something was exchanged; he had binoculars. He could see. It was light enough that he could see. They passed in front of him, I think. He had reasonable suspicion plus probable cause, in this Court's opinion, to take him down. He did it appropriately. Cocaine was dropped from the Defendant's hand.
For all those reasons I'm going to deny the Motion to Suppress the Evidence.
Thereafter, the defendant entered a Crosby plea, pled guilty to the multiple bill, and was sentenced as a second offender. This timely appeal followed.
LAW AND DISCUSSION:
On appeal, the defendant argues the trial court erred in failing to grant the defense's Motion to Suppress the evidence because the evidence was illegally retrieved. The defendant contends that he was arrested without probable cause when the officer ordered him to the ground at gunpoint. As such, he contends that the trial judge should have suppressed the cocaine as a product of an unlawful arrest. The State contends that the encounter was an investigatory stop and the defendant abandoned the cocaine before he was arrested.
The Fourth Amendment to the United States Constitution and Article I, § V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. But, law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as by State and federal jurisprudence, to stop and interrogate persons whom they reasonably suspect of engaging in criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion to stop is something less than the probable cause required for an arrest. In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049, citation omitted. An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Davis, 00-278 (La.App. 5 Cir. 8/9/00), 768 So.2d 201, 212, writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205.
The determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 880, per curiam. The State has the burden, in a hearing on a Motion to Suppress evidence, of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's denial of a Motion to Suppress is afforded great weight and will not be set *99 aside unless the preponderance of the evidence clearly favors suppression. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
The initial question in the case at bar is whether there was reasonable suspicion of criminal activity to support an investigatory stop. In State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117, this Court held that an officer had reasonable suspicion to justify an investigatory stop after observing the defendant engage in what the officer believed was a hand-to-hand transaction.
We find the totality of the circumstances support the trial judge's finding of reasonable suspicion of criminal activity. Although the record does not disclose that the officer had specific information about the defendant, he did have information that drugs were being sold out of the particular apartment the defendant visited. All of the factors together, including this experienced officer's observation of the apparent hand-to-hand transaction outside of an apartment under surveillance for narcotics activity in a high crime area, and the fact that the officer had made other narcotics arrests there, formed reasonable suspicion of criminal activity to support an investigatory stop.
The next issue is whether Officer Giacona's approaching the defendant from behind, drawing his weapon, and ordering the defendant to the ground, elevated the encounter to an arrest. An arrest occurs when the circumstances indicate intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276. A seizure is an arrest, rather than an investigatory stop, when a reasonable person in the defendant's position would have understood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest. State v. Cojoe, 01-2465 (La.10/25/02), 828 So.2d 1101, citation omitted. However, the use of actual restraint does not, alone, transform a street encounter between the police and a citizen into an arrest because an investigatory stop necessarily "involves an element of force or duress, temporary restraint of a person's freedom to walk away." State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286, per curiam, (citation omitted).
In State v. Cojoe, supra, the Louisiana Supreme Court explained that there is no specific test to determine whether an encounter is an arrest or investigatory stop:
Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to physical restraint or when he submits to the assertion of official authority, California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991), no bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), from arrests based on probable cause.

Id. at 828 So.2d at 1103.
In United States v. Sanders, 994 F.2d 200 (5th Cir.1993), cert. denied, 510 U.S. 955, 114 S.Ct. 408, 126 L.Ed.2d 355 and cert. denied, 510 U.S. 1014, 114 S.Ct. 608, 126 L.Ed.2d 572 (1993), the court recognized that pointing a weapon at a suspect, ordering him to lie on the ground, and handcuffing him, does not automatically convert an investigatory detention into an arrest. Id. at 206. Citing numerous cases, the Sanders court pointed out that, "other circuits have held uniformly that, in *100 and of itself, the mere act of drawing or pointing a weapon during an investigatory detention does not cause it to exceed the permissible bounds of a Terry stop or to become a de facto arrest." Id. at 205.
However, in State v. Raheem, 464 So.2d 293 (La.1985), the Louisiana Supreme Court held an arrest, rather than an investigatory stop, occurred when the occupants of a car were ordered out of the car with the officers' weapons drawn. In Raheem, a confidential informant reported that certain individuals were selling drugs in a known drug dealing area and were riding in a vehicle in that area. The officers went to the location and observed a car matching the description provided by the tipster. The Raheem court held that the defendants were arrested at the point when the officers stopped the car, drew their weapons, ordered the occupants from the car and had the occupants place their hands on the vehicle. Id. at 295-296.
Likewise in State v. Simmons, 95-309 (La.App. 5 Cir. 10/18/95), 663 So.2d 790, 794, this Court held that an arrest, rather than an investigatory stop occurred, when officers stopped the defendant's car after leaving an apartment complex under surveillance for drug activity, had him exit and place his hands on his car. This Court cited to State v. Davis, 558 So.2d 1379 (La.App. 5 Cir.1990), which held that an arrest occurred when police officers, who observed what appeared to be a drug transaction, walked up to the defendant and his companion and ordered them to put their hands on their car.
Accordingly, based on this jurisprudence and the facts and circumstances of this case, we find that this investigatory stop was transformed into an arrest when Officer Giacona walked up to the defendant from behind and ordered him to the ground with his weapon drawn.
We now turn to the issue of whether there was probable cause to support the warrantless arrest. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Bolton, 02-1034 (La.App. 5 Cir. 3/11/03), 844 So.2d 135, 141, writ denied, 03-1159 (La.11/14/03), 858 So.2d 417. An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. Id., at 141-142; LSA-C.Cr.P. art. 213.
In State v. Shelton, 96-2322 (La.App. 4 Cir. 10/30/96), 682 So.2d 338, the court found that probable cause existed, where the officer saw the defendant and another man engaging in hand transactions, which officers believed to involve drugs because the area was known for drug activity. The defendant placed a clear plastic bag in his pocket when he saw the officers. The Shelton court held the warrantless arrest of the defendant was justified because the officer believed he had witnessed a narcotics sale. Id. at 339. See also, State v. Simmons, 95-309 (La.App. 5 Cir. 10/18/95), 663 So.2d 790, 793, 794, where this Court held that the officer had probable cause for a warrantless arrest after observing the defendant engage in "some type of exchange," with a known narcotics offender outside of an apartment in a complex where the officer had made previous arrests and had information that drug activity was occurring there.
Thus, we find in the instant case, there was probable cause for a warrantless arrest because Officer Giacona witnessed what he believed to be a crime, i.e. a hand to hand drug transaction based on his *101 knowledge and experience. In addition, there were prior complaints of narcotics activity regarding that apartment where the defendant visited and more specifically, the officer's prior arrests involving narcotics and weapons from people leaving this particular apartment.
The defendant notes that Officer Giacona testified that it was light outside at the time he witnessed the transaction. At trial, the defendant's attorney asked Officer Giacona what time he observed the alleged drug transaction and the officer responded that he was unsure of the time. The defense attorney pointed to the time of 6:42 p.m. on the arrest report and probable cause affidavit as the time of the offense and the time of arrest. Officer Giacona responded that he was unsure of the exact time of the offense, but he was certain that it was light outside. The defendant argues in essence that since it was not daylight savings time and, therefore, it was dark at the time Officer Giacona witnessed the alleged transaction, the trial court should not have considered Officer Giacona's testimony to be credible. In her Reasons for Judgment, the trial judge stated that Officer Giacona used binoculars and that there was enough light for the officer to see the transaction. Credibility of witnesses is best determined by the trial judge and is not to be upset on appeal unless the trial judge abuses his or her discretion. State v. Riley, 98-830 (La.App. 5 Cir. 3/10/99), 731 So.2d 409, 412, writ denied, 99-1301 (La.10/15/99), 748 So.2d 464 and writ denied, 99-1324 (La.10/15/99), 748 So.2d 465. Officer Giacona was cross-examined thoroughly by the defendant's attorney regarding whether it was light enough for Officer Giacona to see the transaction. We see no abuse of the trial judge's discretion in believing Officer Giacona's testimony.
For the foregoing reasons, we find no error in the trial court's denial of the defendant's Motion to Suppress.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note that the transcript reflects that the trial judge properly advised the defendant of the prescriptive period for filing post-conviction relief, while the commitment/minute entry does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Accordingly, this matter is remanded for the limited purpose of correcting the commitment/minute entry to agree with the transcript.
CONCLUSION:
For the foregoing reasons, the defendant's conviction is affirmed. This matter is remanded for the limited purpose of correcting the commitment/minute entry as discussed above.
AFFIRMED; MATTER REMANDED.
NOTES
[1] State v. Crosby, 338 So.2d 584, (La.1976) allows a defendant to plead guilty and reserve appellate review of the denial of his Motion to Suppress.
[2] A court can take judicial notice of the high crime nature of an area. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1078. In State v. Milton 02-272 (La.App. 5 Cir. 11/13/02), 833 So.2d 411, 413, the record showed the Tallow Tree neighborhood was known as a high crime area because of numerous violent crimes and drug transactions.