STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1156

STATE OF LOUISIANA

VERSUS

ERIC L. HUNTER

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C7553B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.

Van H. Kyzar
District Attorney
Billy Joe Harrington
Assistant District Attorney
Post Office Box 838
Natchitoches, LA   71458-0838
(318) 357-2214
COUNSEL FOR APPELLEE:
    State of Louisiana

C. R. Whitehead, Jr.
Whitehead Law Offices
Post Office Box 697
Natchitoches, LA   71458-0697
(318) 352-6481
COUNSEL FOR DEFENDANT/APPELLANT:
    Eric L. Hunter

AMY, Judge.

On August 16, 2003, Deputy Tony Moran was on patrol when he saw the vehicle of the defendant, Eric L. Hunter, parked in the middle of a "dirt gravel road" known as "8 Mile Loop." Deputy Moran testified that he drove down 8 Mile Loop, parked his patrol unit behind the defendant's vehicle, and activated his emergency lights. He further testified that after he exited his patrol unit, the defendant began to drive off. Deputy Moran explained that when he shouted "Sheriff's Office, stop[,]" the defendant stopped and exited the vehicle. According to Deputy Moran, as the defendant approached him, he noticed what he believed was marijuana residue on the defendant's shirt and a strong odor of marijuana smoke. Deputy Moran testified that he subsequently searched the defendant's person and found a cellophane bag containing what appeared to be two ecstasy pills "in a lower coin pocket on his trousers." The defendant was arrested, read his *Miranda* rights, and placed in the back of the patrol unit.

Deputy Moran stated that he then interviewed the female passenger in the defendant's vehicle. According to Deputy Moran's testimony, "there was a strong odor of marijuana coming from the vehicle[.]" He explained that he asked the passenger, "if I called [her] to the scene would she have any illegal narcotics on her person?" The passenger answered affirmatively, reached into her waistband, and removed "a cellophane bag containing approximately 10.3 grams of suspected marijuana."[1]

The defendant was subsequently charged by bill of information with one count of possession of a schedule II narcotic in violation of La.R.S. 40:967 and one count

---

[1] According to Deputy Moran, the crime lab report showed that the "Ecstasy pills came back positive for Methamphetamine, a Schedule II narcotic and a Schedule I Narcotic M.D.M.A." Testing confirmed that the female passenger was in possession of marijuana. The defendant later claimed that the marijuana belonged to him.

of possession of marijuana, second offense, in violation of La.R.S. 40:966(D). He pled not guilty. The defendant filed a motion to suppress, which the trial court denied following a hearing.[2] A writ application was later denied by this court. On February 10, 2006, the defendant pled guilty to possession of a schedule II narcotic with the possession of marijuana charge being dismissed. He reserved his right to appeal the suppression issue. The defendant was sentenced to three years at hard labor with credit for time served. He now appeals, asserting two assignments of error:

[1.] The pat down search of Eric L. Hunter conducted by Deputy Moran exceeded the bounds permitted under a "Terry Type" (C.Cr.P.Art. 215.1) search.

[2.] The Natchitoches Parish Deputy Sheriffs "frisked" the person of Eric L. Hunter after his automobile was stopped and exceeded the bounds permitted under the provisions of Code of Criminal Procedure Article 215.1.

For the following reasons, we affirm.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.[3]

---

[2] We note that at the suppression hearing, the State submitted the testimony taken at a preliminary examination.

[3] Although not error patent, we note that, according to Deputy Moran, the crime lab report showed that the ecstasy pills contained both a schedule I controlled dangerous substance and a schedule II controlled dangerous substance, namely methamphetamine. The bill of information reflects that, in addition to possession of marijuana, second offense, the defendant was charged with possession of a schedule II narcotic, a violation of La.R.S. 40:967. The transcript of the guilty plea and sentencing hearing reflects that the defendant pled guilty to possession of a schedule II narcotic, cocaine. To the extent that the transcript reveals a discrepancy in the labeling of the particular schedule II drug in possession, such a discrepancy does not require correction in this instance as the defendant's appeal does not address his plea. Further, the defendant received a benefit from the plea agreement as the possession of marijuana charge was dismissed and the sentencing exposure for the remaining offense was limited by the State's recommendation, and the court's acceptance, of a three-year sentence. *See State v. Collins*, 03-388 (La.App. 3 Cir. 10/8/03), 865 So.2d 117 and *State v. Charles*, 02-443 (La.App. 3 Cir. 10/2/02), 827 So.2d 553, *writ denied*, 02-2707 (La. 3/28/03), 840 So.2d 569.

*Search*

In his brief submitted to this court, the defendant argues that not only did the frisk of his person exceed the bounds of a "Terry Type" search, it also violated La.Code Crim.P. art. 215.1.[4]

After reviewing the record, we find that La.Code Crim.P art. 215.1, which codified the United States Supreme Court's authorization of protective searches for weapons in *Terry*,[5] is not dispositive in that Deputy Moran had probable cause to arrest the defendant. Louisiana Code of Criminal Procedure Article 201 defines arrest as "the taking of one person into custody by another ... [by] actual restraint of the person." In *State v. Temple*, 02-1895, p. 9 (La. 9/9/03), 854 So.2d 856, 862, the supreme court explained that:

> [P]olice officers may make warrantless arrests if probable cause exists, that is, "when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." *State v. Cojoe*, 01-2465 (La.10/25/02), 828 So.2d 1101, 1104; *State v. Marks*, 337 So.2d 1177, 1182 (La.1976) (citing *Beck v. Ohio*, 379 U.S. 89, 90, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)); La.C.Cr.P. art. 213. Whether probable cause exists to arrest a suspect is determined under the totality of the circumstances known to

---

[4] Louisiana Code of Criminal Procedure Article 215.1, regarding temporary questioning of persons in public places, frisk and search for weapons, provides in pertinent part:

> A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

> B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.

> C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

3

the officers at the time of the arrest. *State v. Moreno*, 619 So.2d 62 (La.1993).

In *State v. Marler*, 00-493 (La.App. 1 Cir. 2/16/01), 797 So.2d 706, the first circuit examined the circumstances leading up to the defendant's arrest and determined that probable cause existed for the arrest. In the early morning hours, two police officers noticed that the defendant parked his van in the street for approximately five minutes. Consequently, the officers parked their patrol unit behind the van and activated the unit's emergency lights. According to the officers, they were trying to determine what the defendant was doing and if there was anything wrong with him. The defendant began backing the van up toward the patrol unit and stopped when the officers sounded a horn. The defendant then pulled into a service station. When the officers began conversing with the defendant, they opined that he was intoxicated because his speech was slurred, he had trouble keeping his balance, and he smelled of alcohol. With his consent, the officers searched the van and found an open alcoholic beverage container and a crack pipe. The defendant was subsequently arrested and read his *Miranda* rights.

After finding that the officers had reasonable suspicion to stop the defendant and question him, the first circuit explained:

> [T]he behavioral manifestations of defendant's intoxication (including slurred speech, unsure balance, and the odor of alcoholic beverage about his person) observed by the officers when they engaged him in conversation in the service station area where he exited the van, provided the officers with probable cause to arrest defendant for driving while intoxicated.

*Marler*, 797 So.2d at 710.

Here, Deputy Moran testified that on August 16, 2003, he had "been down to Sibley [Lake, and] as I was headed that way I looked to the left and saw the [defendant's] vehicle parked in the roadway. When I was coming back, the vehicle was still parked in the middle of the roadway so I decided to pull onto the 8 Mile

4

Loop." According to Deputy Moran, the dirt portion of 8 Mile Loop is an "area known for drug activity and underage drinking."[6] He explained that he approached the defendant's vehicle because he wanted "to check on the status of the vehicle to see if the . . . driver of the vehicle was disabled or possibly drunk."

Deputy Moran stated that he parked his patrol unit behind the defendant's vehicle and activated his emergency lights. He exited his patrol unit and observed that the defendant's vehicle was moving. Deputy Moran explained that he yelled, "Sheriff's Office, stop" at which point, the defendant stopped and exited the vehicle. Deputy Moran testified that he recognized the defendant "as being Eric Hunter, a known drug offender in Natchitoches." According to Deputy Moran, as the defendant "walked to the back of the vehicle, I noticed that he had suspected marijuana residue down his white New Orleans Saints [j]ersey[,] and I also detected a strong marijuana smoke odor about his person." Deputy Moran described the suspected marijuana residue as a "[g]reen vegetable matter down his shirt." He explained that based on these observations, he searched the defendant and found "a cellophane bag containing two . . . suspected Ecstasy pills in a lower coin pocket on his trousers." He arrested the defendant, read him his *Miranda* rights, and put him in the back of the patrol unit.

Given the circumstances, the record supports a determination that Deputy Moran had probable cause to arrest the defendant for possession of marijuana in that the defendant was parked in an area known for drug activity, was a known drug offender, had suspected marijuana residue on his shirt, and smelled of marijuana smoke. Our attention now turns to whether the search of the defendant's person was permissible.

---

[6] Deputy Moran estimated that in a six month period, he made four or five arrests in the area and that he knew of fellow deputies who had made arrests as well.

In *State v. Sherman*, 05-0779, p. 8 (La. 4/4/06), 931 So.2d 286, 292 (citing *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471 (1973) and *State v. Breaux*, 329 So.2d 696, 699 (La.1976)), the supreme court stated that "a search incident to a lawful custodial arrest is a limited exception to the constitutional prohibition of warrantless searches." "[S]earches incident to arrest conducted immediately before formal arrest are valid if probable cause to arrest existed prior to the search." *Id*. In sum, "where probable cause to arrest exists, a search of the person does not violate the Fourth Amendment or La. Const. art. I, § 5, where the suspect is subject to the greater intrusion of arrest and search." *Id*. at 295.

As previously mentioned, probable cause existed to arrest the defendant for possession of marijuana upon Deputy Moran seeing suspected marijuana residue on the defendant's shirt and smelling marijuana smoke on him. Although the defendant was not under formal arrest at that time, Deputy Moran had the authority to search his person for weapons and/or contraband. Thus, the record supports a determination that this was a valid search incident to arrest.

This assignment is without merit.

**DECREE**

For the above reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**