MARION F. EDWARDS, Judge.
 

 | ^Defendant-appellant, Mark A. Kelley (“defendant”), appeals his conviction and sentence on a charge of possession of cocaine. We affirm.
 

 Defendant was charged with one count of possession of cocaine in violation of LSA-R.S. 40:967(C). He was tried by a jury, found guilty as charged, and sentenced to serve four years at hard labor.
 

 The State filed a multiple offender bill of information alleging defendant was a second felony offender based on a prior armed robbery conviction. Defendant stipulated to the correctness of the allegations in the multiple bill, and the trial court adjudicated defendant a second felony offender. The trial court vacated defendant’s original sentence and imposed an enhanced sentence of five years at hard labor without benefit of probation or suspension of sentence.
 

 FACTS
 

 Officer Donald Herrmann (“Officer Herrmann”), a member of the Kenner Police Force, was on patrol on the evening of July 28, 2005. Officer Herrmann |3was part of a three-man team patrolling high-narcotic crime areas on foot. The officers, who were clad in police tee shirts, observed a hand-to-hand transaction between two African-American male subjects. As the officers approached, one man fled. The other began walking briskly away. Officer Herrmann caught up with the second suspect and engaged him in a conversation concerning the observed transaction. For his safety, Officer Herrmann conducted a pat-down search. He felt a rocklike substance in defendant’s right front pocket, which the officer believed to be cocaine. Officer Herrmann testified that defendant attempted to get his hand in his front pocket during the pat down search by Officer Herrmann. Officer Herrmann removed the object that tested positive for cocaine. Defendant was arrested after a brief struggle.
 

 On appeal defendant assigns one error for our review. Defendant asserts the trial court erred in failing to grant the defense’s motion to suppress the evidence. Defendant argues the rock cocaine found in his pocket was illegally seized and should have been suppressed. Specifically, defendant argues the hand-to-hand transaction observed by the officers was insufficient to provide probable cause for arrest because the officers did not see anything change hands. Alternatively, defendant argues that there was no reasonable suspicion to conduct an investigatory stop because shaking hands is not an illegal or suspicious act.
 

 
 *687
 
 The State responds that the cocaine was legally seized, and the trial court was correct in denying defendant’s motion to suppress the evidence. The State argues that officers had reasonable suspicion to conduct an investigatory stop when they observed the hand-to-hand transaction in a high-crime area known for frequent narcotics transactions and because of the subsequent flight of the two participants. Given the factual situation, the State argues the officer was justified in making a pat-down search for his safety. Finally, the State maintains the 14cocaine was properly retrieved under the plain-feel exception to the warrant requirement.
 

 LAW AND ANALYSIS
 

 It is well settled that both the United States Constitution and the Louisiana Constitution prohibit unreasonable searches and seizures. Warrantless searches and seizures are
 
 per se
 
 unreasonable unless justified by one of the exceptions to the warrant requirement.
 
 [1]
 
 If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.
 
 [2]
 

 In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant.
 
 [3]
 
 The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 [4]
 

 The first issue presented for our review is whether defendant was arrested at the time Officer Herrmann frisked him for weapons. We find that he was not.
 

 There is no specific test to determine whether an encounter is an arrest, which requires probable cause, or an investigatory stop, which requires a lesser showing of reasonable suspicion.
 
 [5]
 
 An arrest occurs when the circumstances indicate intent to effect an extended restraint on the liberty of the accused.
 
 [6]
 
 A seizure is an arrest, rather than an investigatory stop, when a reasonable person in the defendant’s position would have understood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest.
 
 [7]
 

 |fiLaw enforcement officers are authorized to stop and interrogate persons whom they reasonably suspect of engaging in criminal activity.
 
 [8]
 
 Under .the Fourth Amendment, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime.
 
 [9]
 

 In the matter before us, we find defendant was not arrested at the time of the pat down search. There is nothing in the record that suggests the officers intended
 
 *688
 
 to effect an extended restraint on defendant’s liberty at that point. At both the suppression hearing and trial, Officer Herrmann testified that he observed a hand-to-hand transaction between defendant and another black male. He stated he approached defendant to engage in conversation to determine what defendant was doing in the area.
 

 At the suppression hearing, Officer Herrmann testified that he frisked defendant for weapons. At trial, Officer Herrmann explained that he conducted the pat-down search for his own safety. This is consistent with an investigatory stop. Thus, a finding that probable cause existed for arrest is not necessary. We find that the circumstances and facts of this case show that the officers conducted an investigatory stop, which requires only a showing of reasonable suspicion.
 

 Reasonable suspicion to stop is something less than the probable cause required for an arrest.
 
 [10]
 
 In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, a reviewing court is to consider the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. An officer’s | fiexperience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidents of crimes are factors that may support reasonable suspicion for an investigatory stop.
 
 [11]
 

 Recently, in a factually similar case, this Court determined the police had reasonable suspicion to conduct an investigatory stop of the defendant where the officers testified they witnessed the defendant engage in a hand-to-hand transaction in a high-crime area even though the officers could not identify what changed hands in the exchange.
 
 [12]
 
 This Court concluded the totality of the circumstances justified the investigatory stop and noted that the other party to the hand-to-hand transaction fled at the sight of the police and that the defendant tried to evade them by quickly walking to his vehicle. We observed that flight by a defendant’s companion at the sight of police can be a factor in determining reasonable suspicion.
 
 [13]
 
 Flight from a police officer is highly suspicious and, thus, the amount of additional information required to provide officers with reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
 
 [14]
 

 At trial, Officer Herrmann stated the hand-to-hand transaction lasted approximately five seconds. He explained he saw defendant and a second subject walk towards each other, interact for approximately five seconds, and then walk in opposite directions. Although defendant suggests the two were merely shaking hands, the fact that a possible innocent explanation may exist does not require an officer to turn a blind eye to the circumstances and his experience.
 
 [15]
 
 At the suppression hearing, Officer Herrmann testified he was working on a disruption unit at the time of the incident. He explained a disruption unit patrols high-crime, frhigh-
 
 *689
 
 narcotics sales and usage areas, looking for narcotics and stated the area where the incident took place was a high-erime/high-narcotic area. At trial, Officer Herrmann stated he was working a pro-active narcotics investigation in the area. He also testified he had been an officer with the Ken-ner Police Department for six years and had made approximately fifty narcotics arrest.
 

 Based on the totality of the circumstances and the above cases, we find Officer Herrmann had reasonable suspicion to conduct an investigatory stop of defendant.
 

 After a lawful investigatory stop, a police officer may frisk a suspect for dangerous weapons only where a reasonably prudent person would be warranted in believing that his safety or that of others is in question.
 
 [16]
 
 The officer need not establish that it was more probable than not that the detained individual was armed and dangerous. Rather, it is sufficient that the officer establish a substantial possibility of danger.
 
 [17]
 

 Officer Herrmann testified he conducted the pat-down for weapons for his safety, the safety of the defendant, and the safety of the other officer on the scene. Although Officer Herrmann never expressly stated he believed he was in danger, the record shows defendant was stopped as the result of a suspected drug deal in a high-crime area. The Louisiana Supreme Court has recognized that there is a close association of weapons and narcotics trafficking.
 
 [18]
 
 The officer’s familiarity with the high-crime character of the area and the close association of weapons and narcotic trafficking were sufficient articulable circumstances that justified the officers’ frisk for weapons after a lawful investigatory stop.
 
 [19]
 

 |aIn the course of a frisk for weapons, if an officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the officer may seize it under the “plain feel” exception to the warrant requirement.
 
 [20]
 
 Officer Herrmann testified that, when he patted defendant’s front pocket, he felt a rock-like substance that he believed to be crack cocaine based on his experience as a police officer and knowing what crack cocaine feels like, what he saw prior to the stop, and his location in a high-crime area.
 

 In conclusion, we find that Officer Herr-mann had reasonable suspicion to conduct an investigatory stop of defendant based on his observation of defendant engaging in what Officer Herrmann believed to be a hand-to-hand transaction in a high-crime/ high-narcotic area, the subsequent flight of defendant’s companion, and defendant’s attempt to elude the officer’s upon his approach. After lawfully stopping defendant, Officer Herrmann was justified in conducting a pat-down search for weapons for his safety based on the facts he had just witnessed what he believed to be a drug deal in a known high-crime area and the recognized association of weapons and drug trafficking. Thereafter, Officer Herrmann validly retrieved the cocaine from defendant’s pocket under the plain
 
 *690
 
 feel exception to the warrant requirement after immediately recognizing it as contraband during the pat-down search of defendant.
 

 Accordingly, we find the trial court properly ruled the evidence should not be suppressed. This assignment is without merit.
 

 Defendant has requested an error patent review. This Court routinely reviews the record on appeal for errors patent on the face in accordance with LSA-jC.Cr.P.9 art. 920.
 
 [21]
 
 Upon review, we find no errors that require comment or correction.
 

 For the reasons set forth herein, we affirm defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 .
 
 State v. Leonard,
 
 06-361 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 765.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 . LSA-C.Cr.P. art. 703(D).
 

 [4]
 

 .
 
 State v. Smith,
 
 06-557 (La.App. 5 Cir. 11/28/06), 947 So.2d 95, 98-99,
 
 writ denied,
 
 06-2960 (La.9/14/07), 963 So.2d 993.
 

 [5]
 

 .
 
 State v. Cojoe,
 
 01-2465 (La. 10/25/02), 828 So.2d 1101, 1103
 
 (per curiam
 
 ).
 

 [6]
 

 .
 
 State v. Simms,
 
 571 So.2d 145, 148 (La.1990).
 

 [7]
 

 .
 
 Id.
 

 [8]
 

 . LSA-C.Cr.P. art. 215.1;
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983), ce
 
 rt. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 .
 
 State v. Smith,
 
 947 So.2d at 98.
 

 [11]
 

 .
 
 Id.
 

 [12]
 

 .
 
 State v. Sam,
 
 08-220 (La.App. 5 Cir. 6/19/08), 988 So.2d 765.
 

 [13]
 

 .
 
 Id.
 

 [14]
 

 .
 
 Id.
 

 [15]
 

 .
 
 See, State v. Fearheiley,
 
 08-307 (La.4/18/08), 979 So.2d 487, 489
 
 (per curiam
 
 ).
 

 [16]
 

 .
 
 State v. Anthony,
 
 07-204 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219, 1226 (writs pending in Louisiana Supreme Court).
 

 [17]
 

 .
 
 State v. Huntley,
 
 08-125 (La.App. 5 Cir. 5/27/08), 986 So.2d 792, 797.
 

 [18]
 

 .
 
 State v. Huntley,
 
 97-965, p. 4 (La.3/13/98), 708 So.2d 1048, 1050
 
 (per curiam).
 

 [19]
 

 .
 
 Id.
 

 [20]
 

 .
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993);
 
 State v. Taylor,
 
 06-558 (La.App. 5 Cir. 7/30/07), 966 So.2d 631, 640,
 
 writ denied,
 
 07-1902 (La.2/1/08), 976 So.2d 717.
 

 [21]
 

 .
 
 See also, State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State
 
 v.
 
 Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990).